Thank you and may it please the court. I'm Alexander Kazam for appellants the Woullard, Gonzalez, and Dodson families. I'd like to reserve four minutes of my time for rebuttal. Just keep an eye on the clock. This case is about unconstitutional discrimination against religion in publicly funded homeschool programs. In dismissing the family's complaint, the court committed three key errors. First, the court failed to accept the family's well-pleaded allegations that these programs are programs of private choice, enabling parents to use funds to procure instructional materials of their preference. Second, the court assumed that there can be no private choice unless the choice is completely, quote, unilateral. And third, the court emphasized that charter schools are deemed public schools under California law when what matters for federal constitutional purposes is the substance of the programs that they administer. Let me let me ask you a hypothetical. So I'm gonna say that in advance so you don't feel constrained to tell me those are not the facts of this case. Let's assume that these charter schools solicit input from your clients about what they should be teaching in the classroom at the charter school and your clients would like precisely the program they would like to teach at home in this case to be taught in the classroom. Do you agree that the charter school, consistent with the free exercise clause, could say no, we choose not to do that? I think if it, Your Honor, I think if it was just a matter of input, we're just, you know... No, could they say we choose not to do it because we do not want to provide a sectarian education? I think if, in your hypothetical, it's just parental input and we're not saying that... They demand. I demand. I want this course taught. I would have taught it at home had you let me teach it at home, but you're, but I want you to, you've chose not to have homeschooling for some home instruction, so I want you to teach it in the classroom. If the general practice is to follow the parents' preferences, to defer to those preferences, then I don't think it would be proper to... So you agree that a state is not required to provide a sectarian education in its public schools? We're not contesting that in a public school. Okay, so now my question is, you don't need to fight that part of the hypothetical, here's the part you need to fight. They choose instead to provide some portion of their instruction, not in the classroom, but at home, under the supervision of a teacher and with the requirement that they approve the curriculum. So the form of the instruction, which would have been in the public school, had they chosen to do it there, is instead being provided at home. Why does that change the analysis? I think your hypothetical assumes that it's the school employee that is doing the teaching, and our contention, and as alleged in the complaint, it's really the parents who are the primary educators. I know you say that, but the difficulty is the structure of the system is the school is rather clearly saying, we will allow you, if we approve it, to have instruction at home. We haven't given you carte blanche to do instruction at home. We have two requirements for that instruction at home. One is that we approve it, and second, that it be under the supervision of a teacher. And our third requirement, the one that you're contesting, is that it be the same kind of thing that we would be required, that we would be allowed to do with the instruction at the school. So my question is, this is not a homeschooling program. They're part of a charter school. There's a whole separate homeschooling program in California that your clients have chosen not to participate in. There's a whole separate system of private schooling in California. So it seems to me your ultimate argument in this case is that having chosen to provide some instruction through this mechanism, the state is required to fund sectarian education. And if that is your argument, I want to make sure I understand it. Your Honor, I disagree that these are not homeschool programs. In fact, Visions itself refers to this as a homeschool academy. I think that's what... What do the regulations refer to it as? Well, independent study. Independent study. So, I mean, arose by any other name, but this is, you're not enrolled in a homeschool program. You're enrolled in a charter school. There is a whole separate homeschool program that your clients could have chosen to be in. The state has separate regulations for it. So this is an independent study program run by a charter school that happens to occur at home under the supervision of the school and subject to the school's approval. And so I'm trying to figure out why the requirement for funding sectarian education is any different than if the program were offered physically at the school. Well, Your Honor, I think it comes back to the fact that this is a program of private choice. Certainly, as alleged in the complaint, you know, we're at the motion to dismiss stage here. Our allegations have to be accepted as true and taken in the light most favorable to the families. And I don't think you can fairly read the district court. But that's a legal conclusion that it's a program of private choice. We know what the structure is. We know what the regulatory structure is and what the regulatory structure is. And this is, under California law, a public school. It is a it it must admit people without regard to religion. It must not discriminate with respect. It is owned by private people. So I'm still having difficulty figuring out why the analysis, because after all, at the end of the day, what you're saying is that the state must fund sectarian education under these circumstances. And I have not found a single case anywhere under the free exercise clause that requires the state to fund sectarian education. Is there one? Your Honor, that would be the that would be exactly what happened in Carson and Espinosa. No, no, no. In those cases, the state was required to pay tuition for somebody to attend a sectarian school. You're making a broader claim. You're making a claim that the state is required to fund a sectarian education. And I'm not sure either of those cases stand for the proposition that state money must be used to fund sectarian education at a school owned by a religious institution. Is there any such case that you're aware of? Well, Your Honor, as I as I read Carson and Espinosa, that that's exactly what was going on there. Those were sectarian schools. They were sectarian schools, but all that was required was that the tuition voucher could be used or the money could be used to pay for tuition at those schools. Is there any requirement in those cases that the state money be used to fund sectarian education? There is no requirement that it be limited to sectarian education. But once you're opening it up to parents to direct their educational choices, it doesn't matter whether the educational choice takes the form of we're going to send our student to a private brick and mortar Catholic school or we're going to go online and find a homeschool curriculum from a private Catholic curriculum provider. And so I think it's just it's a little bit of an optical illusion here, where just because it's not brick and mortar schools, you don't think of them as private schools. But essentially, these curriculum providers are like private schools. And when these parents are able to select a different curriculum, they're allowed to select secular, private curriculum, but they're not allowed to select religious. Can you can you discuss a little bit what the record shows about the scope of curricular choice that is available to parents? I mean, aside from the non-religious part, but what what sort of freedom do parents have in selecting a curriculum in these programs? Your Honor, we allege in the complaint that there is a wide range of curriculum choices because of the stage of the proceedings. You know, that's that's that's a kind of fact that exactly the kind of factual question that we'd like to develop further. But that's kind of the whole point of these these homeschool programs. The idea is individualized learning when they talk about, you know, why people why parents come to these programs. It's because it allows for that customized, you know, extremely flexible learning, as Blue Ridge says. But there are some constraints. Right. I mean, like there there. I mean, as I understand it, like you couldn't, for example, decide, like, you know, I want to focus just on the humanities and not teach any math or science. Right. That's true, Your Honor. But that's also true in private schools in California where everyone would concede that they're private schools, but they still need to teach the several branches of study that are taught in the public schools. There are even some requirements, like, for example, in science, private schools have to teach about climate change. There are certain eras of history that private schools have to teach. So, you know, I don't think that that would be to have a distinguished this. OK, but and why I may or may not distinguish that I'm just trying to get down what the facts are. But and there is oversight from the employees of the charter schools who sort of periodically review the work. Right. And then make sure that the curriculum is being adhered to. Sure. That's right. Yeah. And to follow up just a little bit on your last question about the content that that would be, you know, if there was it was just humanities, that wouldn't meet the state content standards, which include mathematics and English, other subjects like that. But a parent could run an independent study program if it's not the entire curriculum focused on humanities. Right. Could a parent. Sure. I mean, the independent study programs don't have to be the entire curriculum, do they? Well, in at least in these programs, you know, I think possibly there are other independent study programs where it's just, you know, maybe a parent is teaching at home something that's taught in the brick and mortar school down the street. Maybe the or one subject. But the student is attending these charter schools. So let's assume somebody is attending a charter school. As I understand this, the regulatory and statutory structure, it doesn't require that the independent study program completely replace classroom instruction. It is it can be part of it can be part of the program. Can it not? That may be true for other independent study programs. I'm familiar with these particular programs and how they work. And the way these programs work is that you do have to have a curriculum that meets the state content. No, that was my question. Is that these programs require that they completely replace the in-classroom instruction at the charter school or merely supplement the instruction at the charter school? Well, in the Blue Ridge program, I'm not sure there is any any in-class instruction. There isn't any at all. And in the in the programs that are at issue here, like in the vision program and the Blue Ridge program, I think visions may offer other programs that have classroom instruction. I'm not sure. I think they have a variety of different options. But the programs that were, you know, our clients were excluded from based on their religious choices are these homes. But to get back to Judge Miller's question, the reason that your clients programs were not approved was because of the sectarian component. Yes, but not because they failed to meet other state requirements. Exactly. Yes. OK. Yeah. Yeah. In fact, in fact, there's, you know, as we allege in the complaint, you know, Mr. Willard was was told, you know, the academics are fine. The problem is the religious aspect. And similarly, you know, Carrie Dodson was told, you know, this curriculum sounds amazing, but it's it's you know, it's religious. That's not been the focus of the project. And you don't contest that that if the California statute is constitutional, that would violate the California statute. It's your claim is that the California statute is not constitutional as applied to this circumstance. That's right, Your Honor. Yeah, that's right. So in both both Espinosa and Carson, the court emphasized the distinction between discrimination based on status and discrimination based on use. And the court said that the restrictions there were not use restrictions. They were just the status of the institution that was getting the funding. How does that work in the context of this case? Because it seems like, you know, the argument on the other side is that, you know, you are proposing to take public funds and use them for religious curricula. So how do Espinosa and Carson support that? Well, Your Honor, and to the extent there was any ambiguity in Trinity Lutheran and Espinosa about the status use distinction, the Supreme Court expressly resolved it in Carson and they they said there is, you know, that, you know, there is no there is no distinction for purposes of the free exercise clause. If parents want to use, you know, basically a person of faith is what a person of faith does. And if they want to use these funds to attend religious schools that teach religion, you can't discriminate based on the use of those funds. It's not just the fact that they have a religious affiliation. Counsel, is your claim a facial claim or as applied? So to the extent we're challenging the California state law, it's as applied to these particular programs. We've acknowledged that there may be programs that are structured in other ways that would not be subject to the same challenge. But because these are programs of private choice, we do challenge them as applied here. It's that your claim is as applied and it's hinged on the fact what that these particular programs allow for a wide range of parental choice in the materials. Is that because of that fact as applied to these particular choices? But there could be other programs under other conditions. It would be perfectly legal. So, for example, if the charter school said you can choose from these 20 sets of materials and none of them were religious and you found a sectarian version of that. And it was denied because it was outside of the 20, you would have that would be constitutional. I think that would present a different question because, Your Honor, from the from the way your hypothetical sounds, it sounds like they're kind of curating this limited selection and it's this kind of closed universe. That's not what we have here. You know, despite I know what my friends on the other side said in their briefs, we've we've alleged that and we've shown, I think, in reference to the charter documents, that there's not this kind of limited small set of list that you can you can to the extent there are, you know, you have to choose from approved vendors, you can get approval for other vendors. And, you know, our clients choices have been rejected on the basis that those vendors are religious. And is it to put a finer point in it? Is it because the vendor is religious, but the materials are fine? Or is it because the materials contain content that the don't meet the state law requirements? I believe both both forms of rejection have happened. I think probably the more common allegation or complaint is that it's based on the based on the materials. But is there any case in which it was rejected because the vendor was religious, but the materials were non sectarian? I'm unaware of any allegation in this case. In other words, let's assume that the Mormon Church does a great math program and it never refers to anything about faith. There's nothing in this case that suggests that you wouldn't be able to buy materials from the Mormon Church to teach algebra, is there? I don't think so, though. The math. Your real contention is that the materials are sick. They were being rejected because the materials are sectarian. Right. Right. I'm being rejected because of the identity of the provider, but rather of the content of the materials. Right. I don't want to say for sure that that hasn't happened. That's the way I read your complaint. You're not saying, gee, a religious Catholic person prepared this algebra program and the state rejected it because it came from a religious Catholic person. You're saying the state rejected it because it taught it taught the materials in a sectarian manner. Yeah. Again, I don't know for sure that that hasn't happened. We're not asking you to address in the world ever saying in your complaint, the allegations are that the rejections were based on religious content of the materials. Yes, I think that's right. So so I'm still interested in in playing with hypotheticals in this case in just a little bit. So is it is it your position that let's take Maine, in which the state had this peculiar program that said, well, fund private schools where there are no public schools. And we won't fund religious. We won't fund your tuition to go to a religious school. Could the state of Maine now say, OK, we understand what the Supreme Court has told us. We can't prevent you from going to a school because of its religious nature. But we're going to do what used to be done for higher education grants, which is that we'll give you the money, but we won't let the school use any of that money to provide religious education. Would that be constitutional? I don't think so, Your Honor. I think that one exception would be Lockheed Davy, which the court has said that there's a unique tradition involving training clergy. So, you know, sure. I'm going to put put that issue aside for a second. I mean, because the higher education programs, at least the ones that were the extent for a long time, said we can't not give a physics grant to Notre Dame because it's a religious institution. But we can say you can't use it for theology, for theology instruction consistent with the free exercise class. Could the state of California do that here and say, OK, well. You know, we'll fund your private program, you'll fund what you say are private programs, but we won't fund a religious component of those programs. Your Honor, I'd like to answer your question, but I see that we'll make sure you don't worry. He'll be he'll be nice. So I think if you're if your question is, you know, could the government say, well, we just want to fund engineering. We think it's important to have more people in STEM field. I don't think that would require them. No, no. That's not my question. So let me rephrase it so you understand it. Let's assume you have to fund somebody's attendance at a religious school under certain circumstances as as means as the main case says you have to. Can the state restrict the use of the funds that the school gets through the tuition grant or waiver or voucher to non sectarian education? I think the answer to that question is yes, and if it is, then why can't the state do the same thing here? So, Your Honor, I think the difference here is that there's a program of private choice. Right. So if if you're allowing parents to select all these different curriculum with all these different viewpoints like in this program, you could choose a libertarian curriculum. It's the parents choice. It's parent directed education at home with their children. You could choose a socialist curriculum. Right. But you can't choose a curriculum in this program that reflects a religious worldview. And that's where we think the discrimination comes in. All right. We'll give you your four minutes for rebuttal. OK, thanks very much. All right. And we have three people on the police side. So if you can just state your name and which party you're representing, please. Good afternoon, Your Honor. Thomas Prouty for the state superintendent. May it please the court. A curriculum may be thought of as a specific plan for using specific materials, activities and assignments. To result in one or more students acquisition and comprehension of certain content and skills. Now, in that precise respect, there's not one California public education curriculum. But there are detailed state adopted content standards in a range of subjects. There's also more general public education standards that cross subjects. And that's a feature, not a bug. When you enroll in a California public school and a public school official decides on a curriculum that they've determined is 100 percent aligned with every single. But that's not the issue in this case. I mean, the issue in this case is framed by the complaint. It's not that is simply that the state will refuse to fund. If you. Sectarian education as part of this program, it's not whether the program as a whole meets state requirements. You didn't say, well, you put together this program, but it's lacking enough math or it's lacking enough history. What you said was and you may be entitled to, but I want to get to that issue. We won't fund sectarian education as part of this program. And so the only issue in this case, from my perspective, is not whether the state's entitled to demand a well-balanced education. Or can look at a particular program that a parent has and says, well, you're too light here on the humanities. This is a case in which there was a blanket refusal to fund programs that had a sectarian component. And so my question, I think the end and the question at the end of the day is whether that's permissible under the free exercise clause, not whether the state might have a broader requirement of of of education that's not met by these particular parents. They may be terrible educators and you may be able to say you're not teaching them enough math and science or whatever. But that's not what you said. What you said was here's the reason we're not funding this. It's because it's sectarian and the state constitution prevents us from doing that. So I think you need to address that. What the charter school said is we are not. Charter school are not adopting the curriculum that you're suggesting because because it didn't meet 100 percent of all state standards, including that it be secular. Now, there could be questions. I mean, you could have lots of hypotheticals about whether a particular religious instruction will comply with the next generation science standards. Well, then if that's the case, then shouldn't this case move to trial? Because what what you're saying is that we turned them down for a different reason than their religious preference in the case. We turned them down for a broader educational region and they've alleged you turned them down because of the religious nature of the some of the instruction they wanted to provide. And see, I thought both sides agreed that the reason for turning their their their proposals down was they included a sectarian component. If you're saying there was an entirely different and independent reason for turning them down, then on the basis of the complaint, I don't see how we can uphold the dismissal. I think that they were the charter school officials decided that they were sectarian and that was a basis. Yes. I mean, so I'm not sure. But I'm not sure why you're fighting that, because if you're right, we ought to reverse and say what was the real reason? Now, I'm not fighting that. I think it's I think it's conceded that the plaintiffs have alleged and more importantly, the independent study regulations and the Charter School Act required that the charter school officials are the ones to decide what the curriculum is in their school. Let me let me ask you this hypothetical. So suppose the state decided, you know, for whatever reason, we want to encourage homeschooling. So anybody, you know, not not through the charter school, but just an ordinary homeschooling, anybody who's homeschooling, if you meet whatever requirements the state would otherwise impose on you for homeschooling and you send in a certification and say, I'm homeschooling my child, we'll send you five hundred dollars to use on materials to help you. But the one restriction is you have to say you're not going to use it on anything religious. Do you think that would be constitutional? I think under that hypothetical, you would you could say that the if the intent of the law. Well, the law is just what it is. I don't know what the intent is. The two critical things in this case that loom large is I think it's conceded the curriculum would only be approved if it met 100 percent of every single public. No, no, no, no. You just you get a you get a check. You're talking about this case. But what is the answer in the hypothetical? The Californians the right to choose their own private private education, then you should include religious education. But in this case, OK, so, I mean, I guess I think a lot of what's the argument on the other side is, is that what you have here is essentially in substance, you know, not all that different from the hypothetical in that you have these sort of charter schools that are sort of pass through ways of funding homeschooling. So now you can get to why is it not that the reason why I started off talking about there's not like one curriculum every day in a thousand school districts and a thousand charter schools. Public school officials are determining what the actual curriculum will be. And it's not just the textbook. It's activities, field trips, assignments. And there's there's an admission in this case that the public school officials retain final approval authority over the curriculum. So in this case, it wasn't when you could say parent choice, but that's a conclusion that's not accepted. You really look to the law, the regulations to do what you're saying. Is it? And I want to focus on Judge Miller's question. It does make a difference to you that this is participation in a program through what California calls a public charter school. Then if we had a separate program that simply funded home education. Charter schools are full fledged members of. So why does it make a difference? That's what he said. I think that's what he's asking. It's really it's in substance, really the same as if California were funding a homeschool education. I think when the question that you posed to me, Judge Miller, I took it to mean that there weren't two important things. One, that the curriculum that would be used wouldn't have been decided by a public school official to meet 100 percent of all public education standards that apply in a classroom. And that could be taught in a classroom with 25 kids and that the public school official would retain final approval authority over whether it would be used. Now, if in your question, the state of California said, you know, we're just going to go go out there with private education. We're going to give you ten thousand dollars if you want to take it. Don't enroll in a public school. You can choose whatever private school you want. I think under Carson, we're going to say that you can go to a religious, take a private school out of that. And then I mean, and you can do you can do home education if you want. Here's a here's a generally available grant, which is their argument to conduct home education. And but we're going to condition it on you not providing any sectarian education at home. Could they do that constitutionally with the same caveats that we discussed? No, we're not. This is the entire world of the hypothetical. So don't don't make up more facts. That's just that's the entire hypothetical. When a parent they file a private school affidavit, private homeschooling in California, you file a private school affidavit with my client. There's provisions in the law that we don't evaluate it. We don't we don't do any. Right. And then the school district, they just look to see if it's on file. Once you do that, you're essentially a private school. So under your hypothetical where the state doesn't care about approving it, the state doesn't care about. And you're essentially a private school and you can teach religion if you want to. That's that's not the case in this case. But that's right. It's not the case here. So now the question I think we're both I'm interested in. But I'm intuiting Judge Miller's interest in it. Does it make a difference the way the structure they say makes no difference? This is really a private. This is private homeschooling. You say, oh, no, it's not. We have a we have a regulatory structure. It's a private it's a public school. There's a requirement of approval of curriculum and teacher involvement and things like that. This is this is on the public school side, not on the homeschooling side. Is that a fact issue? Is that something? It's not because in this case. It is part of the regulations and the law. California has not decided to do anything like we're not we're we're not going to approve it as as proper for you. And we're not going to determine whether it meets 100 percent of all state standards. Those two things in this case to say that California has decided to adopt an official government policy to subsidize private choice of any private education. It's a fact to this case where it's essentially conceded that the public school decided it had final approval authority over anything. And it had to meet 100 percent of all state standards. And the standards are detailed content across subject. There's other things, too. Right. But I guess the problem with that is that when we take the allegations in the light, most favorable to the plaintiff. I mean, what it looks like is that in practice, like the parents are left with a great deal of choice. And, you know, there's a long list of things that they can choose from. And when they went to you or I guess went to the schools, not to you, and said, you know, here's the here's the materials we want to use. The response was not, you know, no, we're we don't think that that meets all the requirements. The response was, no, that's religious. Right. So it seems like it's the no religious part that's doing all of the work here. And then the other part is is not really much of a constraint in practice. I think it is. And the reason that we have the example with we we approved these 20. Right. The problem is that new curriculum is being created every day. Right. The other thing is governments allowed to be effective. An independent study is a tool that allows for individualization. Now, the government's hope is that the student will reach the highest level of mastery of comprehension and acquisition of state adopted content and skills. Now, parents, they know their children. It would it would be foolish for government not to ask. We have this amazing tool. What are your what are your child's interests? Is he a visual learner? Is he a hands on learner? So allow government to be effective in saying, let's see if there's a 21st. Right. But I guess the the question is not is that, you know, effective or ineffective government. The question is, you know, at what point when you're allowing that much parental involvement and that much parental choice, is it still appropriate to characterize what's happening as a public school rather than public support for. Some sort of private education. I have a factual question for you. If there is, as you say, this private homeschooling option in California, I take it that's not funded by the state. Not at all. So somebody who opted to do. Pure homeschooling, calling themselves a private homeschool, would not get any state money. That's correct. And I think that what's driving this case, I suspect, is that if you're in the. Nominal ambit of the charter school, the state is funding the education that the state funds, it's public schools. That's correct. And I don't want to break my promise to my to my co-councils. Well, no, we we we've set the time separately. So you're not you're not taking time away from them. They'll they'll each have their five minutes. I think I ran ran the 10 and I'm going up. That's right. But but they're still going to get there. So. So, yeah, we're. Yeah. So you're fine. If anybody has a question, it looks like we're done. I did have one other question and maybe it's not relevant. I find your argument that your client has 11th Amendment immunity to have some substance. Do we have to reach it? Is it jurisdictional? And therefore, as to your client, we ought. We need to reach it because it's jurisdictional. I think the judgments being affirmed. Well, I know from your perspective, anyway, you win would be fine with you. I'm asking what our obligation is. You know, I haven't researched that precise issue. I think the judgment's being affirmed. It's a good question. Thank you. Ms. Hall. Good afternoon, Kendra Hall, on behalf of the Blue Ridge Academy, a police. We didn't talk anything about free speech, which is also another claim in this case. I'm happy to go there. I'm happy to discuss any of the issues on the free exercise. It's not a free speech. It's a free exercise. In terms of our client, there were discussions about the content of what was not being approved. And I think that there's very precise allegations in the complaint regarding the text. And all of them are instructional in nature in terms of providing a religious instruction. It is clear in this case that the reason that the requests of the parents for funding were turned down was because that the instruction would be sectarian in nature. Absolutely. And not because it wasn't a well-balanced program. Exactly. And we're also not dealing with the case, for example, where there is a survey course or where a student has been given an opportunity to write an individual perspective. And the school is saying you can't talk about religion. That's that's not the facts here. It's very specifically asking for public funds to fund instructional religious materials. And I don't think they contest that. Maybe I may be wrong, but I'll ask just to be clear. It's also not the case that the curriculum they wanted was rejected on the ground that it's the rejection was not. You know, we have a list of approved curricula and yours is not on the list and therefore we reject it. Like it might have been considered despite its absence from the list, but for the fact that it was religious. Right. Exactly. There is some flexibility to provide as there is flexibility in traditional brick and mortar public schools to take parent input and to consider things that are not on the exact list. But there is that bright line rule that California has adopted that Carson has said is perfectly fine to have a strictly secular education. And, you know, Blue Ridge, we have that we have this constitutional, the statutory mandate. We have our charter in which we've agreed to that. And then you also have that when a student and the parents come to our school, they're signing a master agreement that is stating we understand this is a public education under the supervision of public officials. And so, you know, it's very difficult to reconcile how claims can be made in this case when the voluntary choice is being made to come to our school, which offers this independent study model. If somebody were to ask one of the kids in this program, do you go to public school? What do you think he'd say? I go to a public charter school. But even though he doesn't actually doesn't actually go there. Right. I mean, in the sense of because physically, you know, I mean, I don't know that it matters, but I mean, I mean, I'm confident that the legal test does not turn on that. But it does. It does sort of highlight the the way in which this is is not. I mean, throughout your briefs, you sort of emphasize that this is public education, but it is not, you know, it is not ordinary public education. I well, I think, you know, we're no longer in the leave it to be over days when we could just say what's ordinary. And there are so many different models, as I think my co-counsel is trying to emphasize. And we're one of those models. And it's a model that's great to have for people. And I think some of the Amici were pointing out, listen, my kids getting bullied. My kid, my kid learns at a different pace. And isn't it great that our school offers that opportunity? You know, in public education, that's funded and it doesn't prevent parents now on their own dime from also offering that religious piece of that's important as well. But I think that we're within where the modality in many modalities that are offered and that those are choices that California has allowed. I think I hope I answered your question, but I went a little circular. Sorry about that. And so I've talked about the books. And I and I agree. I think your question has just gotten back to the question that we started with, which is, does the location matter? And I think that really we're still talking about the content. We're talking about the fact that there are many, many regulations ensuring that it's complied with with credentialed teachers. And then going back also to the fact that the parents have signed that master agreement where they are acknowledging going in the door. This is what we're signing up for. We're not signing up for something different. And Blue Ridge isn't handing out checks. It's not handing out grants. You know, this per pupil dollar amount covers a lot of different things and not just a curriculum. And so it doesn't look anything like a voucher program or a grant program. Are you required under state law to offer independent study or merely authorized? As you are, you're speaking to particularly your your charter school. I mean, I believe that our charter is as an independent study. I don't think the law, though, is requiring us to do it. Well, could you could you next year say this just hasn't worked out? We're going to do all of our instruction on site. Or is your charter limited to doing instruction? I think that we would have to work through our charter to change what we're offering. So that was a choice to begin to apply as an independent study charter. Exactly. And and and I think so. And along that lines to impose a requirement somehow that our teachers oversee any number of the thousands of religions that are out there that would want to come in and say, we want this to be part of our curriculum. It's just not workable. And we're getting the state involved in entanglement. I don't think we ever get there, but we're getting down to, you know, establishment clause concerns and funding of these different curriculums. So thank you to my did I reach my time? Thank you very much. Mr. Troy. Kevin Troy for the division's education defendants and respondents may please the court. Appellants allege that this is a pass through funding scheme for private homeschooling. It simply is not. It is. We need not accept those factual allegations as true. And you should not accept the factual allegations are true because they're contrary to law. All of the aspects of the independent study of the students and visions and a Blue Ridge are dictated by law. Whether the student can do can engage in independent study in the first place, that's determined by the school. The objectives in independent study for a particular people are set by the credential teacher of that school. The method of study. To reach those objectives are chosen by the credential teacher of that school. The means of assessment for whether this student is reaching those objectives on their way to reach those objectives are chosen by the credential teacher. The time value of the work product submitted by the student, which is a way of keeping attendance under California law, is assessed by the credential teacher. The progress, the academic progress, whether they're actually reaching their objectives, getting closer, is assessed by the credential teacher. Whether the student can remain in independent study, whether they're making sufficient progress or they haven't been there enough, they haven't submitted enough work samples, that is determined by the school, whether they can remain in independent study. The student has to participate in even independent study, has to participate in all state assessments and all state standards. Could you describe how that differs from the state home study program, if you will, with the one described before, where you apply and say I want to educate my child at home and therefore my private home study program. Are there any state requirements applicable to those programs? No, it's a private school under California law. Are there requirements applicable to private schools under California law? They have to sign to put their address on a register so people will know where the kid is. And there's a very broad language in, I think, Education Code 55155, something like that, 51155, thereabouts. Very broad language of, in a private school, you have to teach the same branches of study as are taught in California public school. Are people turned down on their, I'm going to call them home study applications, I know that's not formally what they're called, because the curriculum being offered is not broad enough or because it includes, they're clearly not being turned down because it includes sectarian education, correct? I don't know of any examples of it actually being turned down. It hasn't been litigated. It doesn't crop up very often. There's a Jonathan L. case that's been cited in all the briefs. It's quite accommodating. California law does not require much in the way of what you learn and where you are in the private school world, including homeschooling, which is treated as a subset of private education under California law. So all of these things I listed are all completely different. This is a school asserting itself via the credentialed teacher. Again, must be credentialed, just like any other public school under California law. And that is the idea that this is just a pass-through funding scheme. That's just a, it's an illusion. That's frankly not what the law demands. They haven't alleged that that's not happening. They haven't alleged that Visions, or Blue Ridge for that matter, aren't complying with those laws. They're alleging, essentially asking you to just forget all of that and say, well, no, what's really happening here? It's just, and their term is, it's a program of private choice. That's all we see again and again. So it seems like what they're trying to say is, yes, we concede that Visions, Blue Ridge, these are states, these are public schools under California law. But for purposes of federal free exercise jurisprudence, they are not conventional public schools. They're not traditional public schools. So they're in this kind of nether region. They're in this kind of other category. But there has been – Are some of the requirements applicable to, let's call them brick and mortar because I don't want to say traditional. I don't know what tradition is anymore in this area. For example, must you admit everyone who applies or can you be selective? The charter schools? Yes. They have to admit everyone who applies. So you're subject to the general requirements of admission of public schools. Are there other general requirements applicable to public schools that are applicable to your client? Essentially all, nearly all of them in terms of you have to provide support. So you're allowed to provide education in a, if I could say it in a nontraditional manner in some cases, but otherwise you're otherwise subject to all the state requirements for a public school. Yes. And private schools are not. Exactly. The idea is innovation. The idea is experimentation, trying a new approach. And I frankly take issue a little bit with the idea this isn't even a traditional or a conventional process. Yeah, that's why I said with quotes. Sorry, I keep interrupting. That's why I said with quotes. I understand. It's been going on since 1990. It actually predates the California Charter Schools Act. If I understand correctly, a, what I would call non-charter public school, pre-existing, a regular public school that's not a charter school can also offer an independent study program? Yes, it can. And they could also, in theory, just allow parents to suggest a wide range of choices subject to the approval of a supervising certified teacher? That's my understanding. I don't represent. Whether that exists or not, in theory, they could do the same exact thing as your program through the auspices of a traditional public school. Is that correct? Yes, that's my understanding. Under California law. The reg seems to allow that. Yes. Okay. I would just say that ultimately their ask is an extraordinary one. It is to asking a federal court to say, to my understanding for the first time, they've offered no precedent for this, to step in and say, yes, we recognize that you state X have deemed this school a public school. You've treated this public school historically. But we, as a matter of federal jurisprudence, have deemed this too far outside the realm, too far away from the platonic ideal of what a public school is under historical norms, under co-counsel mentioned, you know, the Leave it to Beaver theory. I didn't see it on TV 50 years ago, so it's not a public school to me. No court has ever, as far as I'm aware, reached that conclusion or even contemplated reaching that conclusion. It's an extraordinary ask. It's not presented by this case, but could an institution owned by a Catholic school, for example, apply to become a public charter? Yes, as long as the education itself is not. As long as the education is, I always get confused between secular and non-secular, but as long as the education is not religious. As long as it's secular. So this doesn't present the issue that the Drummond case presented? Correct. And to circle back on a point you made, and Your Honor, you made reference to materials and the materials, if the materials are produced by a religious entity, would they be barred? Again, it's not an issue in this case, but my understanding is California law would not bar that. It's funny, you make reference to the Mormon Church, and perhaps the Mormon Church produces math materials. I'm aware of. They produce lots of historical materials. BYU produces a lot of materials that are often used by, as I'm aware of, charter schools, non-classified charter schools, and there's no problem there because it's not sectarian. It's just a good product. As I understand your friend, he's not arguing that the materials were turned down because of the identity of their manufacturer, but rather because of the content of their, maybe I'm wrong. He can correct me if I'm wrong about that. Thank you. Mr. Ghassan, four minutes. A few points on rebuttal, Your Honor. The Applees have really emphasized that there's final approval authority here from the schools for the curriculum choices. Our contention is not that they don't have to approve. Obviously, they have to approve. That's what makes the censorship of religious curriculum possible, but Supreme Court precedent and Ninth Circuit precedent says that mere approval authority isn't enough. In Loffman, for example, this court looked at a scheme where it was really the local education agency that had the final say over the disabled child's placement in a non-public school, but that wasn't enough for the court to say there was no burden. There was still a burden on the parents because, generally speaking, they would have this ability to direct that choice. I think it's important, as Judge Miller noted before, to recognize that, in practice, there is a lot of choice in these programs. I'd like to point the court to ER 374. This is in the Visions Charter document. It says, A credentialed teacher provides parent-slash-guardian instructional support with curriculum guidance. Similarly, in the Blue Ridge Handbook, ER 511, families utilize this planning amount to work with their teachers to carefully select educational products to fit their goals, learning plans, and subjects outlined in their master plan. So does your argument in the end boil down to this is really a publicly funded homeschool program? This is not a publicly funded public education? Yes, that's right. It's a parent-directed program, ultimately. That's our contention. So tell me what—I'm trying to figure out the constitutional significance of your practical description of the case. I mean, this is not—the state is funding these charter schools, and these charter schools are then being asked to fund a form of instruction at home. Why isn't that formal structure determinative of whether this is a public school program as opposed to the fact that it looks a lot like a homeschool program? But they do have a homeschool program that's pretty much entirely different that you've chosen not to enroll in. Well, because, Your Honor, the Supreme Court has said that what matters is substance and not form. Well, it hasn't said—it's really never said that. What the court has said is you may not discriminate in the provision of funds based on religion, but it hasn't said, well, this is really a homeschool program, not a public school program. In fact, the main case seems, I think, to turn a lot on the notion that this really is a public school program. We're funding a public education, and we won't do it at a religious institution, but we'll do it at other private institutions. So I'm trying to figure out what significance it is that this has many of the characteristics of a homeschool program. An educator might describe it as such. But why is that constitutionally significant? Well, Your Honor, certainly the Supreme Court has said that state law labels can't control federal constitutional questions. For example, in Umber— Well, sure, and if they called your homeschool instruction public instruction, then it seems to me we'd have a problem. But here it not only has labels, it has lots of substantive indicia of a public education. It is set up by state regulation. It is funded by state funds. It requires approval of state-certified teachers. It requires approval of state-licensed charter schools. And so I'm trying to figure out why that formal structure isn't enough to overcome your argument and the point that Judge Miller makes. It looks a lot like home education, but it has an entirely different formal structure than home education, doesn't it? No, Your Honor. I think it's actually substantively much more like, you know, pure homeschooling, if you will. Pure homeschooling, the reason you're here— I don't criticize you for it, as you like the state money. If you wanted to do pure homeschooling, you could do it in a minute, but the state wouldn't subsidize it. And so the state has said, we'd like to subsidize some of these experiments, but they have to be done under our formal structure, and here's our formal structure. So I'm trying to figure out why the formal structure isn't determinative here as opposed to the fact that this shares some characteristics with a very different program that you've chosen not to enroll in. Your Honor, because something like approval authority is just not sufficient under— Well, it's not just approval authority. They're providing the money for the program, and when you do homeschooling, you don't get the money from the taxpayers to have the program. There's no generally available program for homeschooling in the state. There is a program available if you enroll in the right charter school and they want to have this program that you can have independent study at home. But they're two quite different structures, and so I guess I'm still asking why the state can't set up these two different structures and say, you want to do homeschooling, go at it. You can teach whatever you want, do whatever you want. We're not going to bother you. Religion is fine with us. But if you want to opt into our public charter system, and it is at least public to the extent that they're funding it and regulate it, you've got to live by the rules of that system. So I guess I'm asking, isn't the substance here really that this is a public system? No, Your Honor, because fundamentally what this is is parents sitting home at the kitchen table with their children teaching a curriculum of their choice. I think we can't just blink that reality. I think that's what the case has to be decided on is what is actually happening in practice. And yes, there is guidance, there is support from the credentialed teacher, but this looks radically different from what you would see in a brick-and-mortar public school. And I think that that's entirely consistent with the line that the court drew in Carson. In Carson, the argument was, on the other side, was that, well, we're just trying to fund the equivalent of a public education here. And the court said, well, no, look at the realities on the ground. This is not just public education. You're allowing for all these other options that really aren't like actual public school, any conventional understanding of what a public school would be. If there are no further questions, we ask that the court reverse and allow our clients to continue developing their claims. Thank you. We thank all counsel for their helpful arguments, and the case is submitted. And we are adjourned. All rise. This court for this session stands adjourned.
judges: HURWITZ, MILLER, SUNG